IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MICHAEL ALLEN WELLS,                §
                                    §
            Plaintiff,              §
                                    §
v.                                  §        Civil Action No. 1:23-CV-00020-H-BU
                                    §
ZACHARY RYAN SUMRULD, *et al.*,     §
                                    §
            Defendants.             §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF
THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Michael Allen Wells filed suit in state court on December 21, 2022. Dkt. No. 1-2 at 4. Defendants filed a notice of removal on January 23, 2023. Dkt. No. 1 at 1–3. Defendants then filed their Motion to Dismiss for Failure to State a Claim and in the Alternative, Motion for more Definite Statement (the Motion). Dkt. No. 8.

For the reasons explained in a Findings, Conclusions, and Recommendation (FCR) entered on June 2, 2023, the undersigned found that Defendants failed to meet their burden of establishing a proper basis for removal jurisdiction and recommended the case be remanded to the 104th District Court, Taylor County. Dkt. No. 10. Defendants timely filed objections to the FCR pointing out, among other things, that the undersigned *sua sponte* considered the existence of this Court's subject matter jurisdiction and found there was none without addressing the merits of their Motion to Dismiss. Dkt. No. 11 at 8. Effectively construing this statement as a motion to reconsider the FCR, the undersigned withdrew the FCR and provided the parties an opportunity to brief the substantiality of the federal question(s) upon which removal was purportedly based. *See* Dkt. No. 12.

1

Defendants timely filed their supplemental jurisdictional briefing as an Opening Brief on Substantiality of Federal Questions. Dkt. No. 15. For his part, Wells has, since the Order seeking supplemental briefing, filed four documents. Dkt. Nos. 13, 14, 16, 17. Three of Wells' four recent filings lacked, in both form and content, any apparent indicia of legitimate pleading or motion, and were docketed by the Clerk's Office as notices, while the fourth is styled by Wells as a Motion for Injunctive Relief.[1] *Id*.

For reasons explained below, the undersigned now finds that this Court has federal question jurisdiction over the removed action under 28 U.S.C. § 1331 and RECOMMENDS that all of Wells' claims be DISMISSED.

## I.    FACTUAL BACKGROUND

Wells' claims arise from what is ultimately a straightforward set of facts, complicated only by the ill-fitting legal theories into which both sides attempted to squeeze those facts. Wells alleges he was terminated from his brief employment at the Abilene location of The Home Depot (Home Depot), a privately owned retail corporation, for refusing to receive the COVID-19 vaccine or, alternatively, submit to testing. Dkt. No. 1-2 at 4–10, 26. On December 22, 2021, Wells asserts that Defendants Zachary Sumruld and Dianna Clapp, managers at the Abilene Home Depot, informed all employees that starting January 4, 2022, they would be required to provide proof of having received the COVID-19 vaccine or submit to testing for COVID-19 every seven days, as then mandated by OSHA. *Id.* at 5.

---

[1] Defendants have now filed a response to Wells' Motion for Injunctive Relief, Dkt. No. 18, and Wells has filed a Restated Motion for Injunctive Relief, Dkt. No. 19.

Wells told his Home Depot supervisors that he is "not a federal employee," and therefore this protocol did not apply to him. *Id.* He informed Sumruld that he would not submit to vaccination or testing, and that he would "do anything it takes to protect [his] rights under the law." *Id.* at 6. Sumruld informed Wells that Texas is a right to work state, and he would be required to comply with the policy. *Id.* In response, Wells provided his supervisors with a copy of the federal criminal statute, 18 U.S.C. § 242, the relevant part of which states that if an individual acting under color of law threatens another with the use of a dangerous weapon, they may face a fine, imprisonment, or be "sentenced to death." *Id.* at 5. Wells, believing that compelled vaccination or testing was analogous to being threatened with a dangerous weapon, maintains that § 242 prohibited the policy in question. *Id.* at 5–6.

Wells alleges that "on 12/24/2021 Home Depot terminated [him] for the cause they state that [he] threatened them for giving them . . . 18 U.S. Code § 242." *Id.* Wells claims that "Zachary Sumrule superiors [Defendants] Craig Menear, Ted Decker, Richard Mcphail, Sherre Maclin, concurred" in the decision to fire him. *Id.*

Specifically, Wells' factual allegations are, in relevant part, that:

On Wednesday 12/22/2021 around 2:05 PM I was called into the Store Manager office at Home Depot by Zachary Sumruld and manager Dianna Clapp was there too. Zachary proceed to inform me starting on January 4, 2022 that a mandatory proof of COVID-19 shot must be present or I will have to have testing for that infection every seven days. He also said he did not want to hear any laws regarding my rights. I asked him is that the testing of going up your nose (which is the standard process now) he said he did not know. He said this is company policy. He said this will occur every seven days as mandated by OSHA. I said I am not a federal employee and that this does not apply to me. He said we have to comply. I said this is not a law.

At that time I informed him under Title 18: 242 that it states that whomever violate my rights can be executed under that law. As shown here;

- **Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, …, shall be fined under this title, or _imprisoned for any term of years or for life, or both, or may be sentenced to death._**

. . .

At that time he said we have all been to court. I said yes we have. I informed him I will do anything it takes to protect my rights under the law. Then he said that this is a right to work state. I said you don't know what you are talking about (meaning: to threatening someone with assault with a violent act repeatedly ever seven days, violating their rights under color of law, if they do not comply to fire them. This is also violation of the HIPA Act of 1996 to protect a worker from potential harm from a political body.

. . .

Enclosing what he said to me is a threat to me to do physical bodily harm and up to death. This physical assault would have occurred to me ever 7th day. Demanding to show proof of a shot thereby violating the HIPA Act of 1996. To have a foreign object violating my body against my will underdress, blackmail. (If you don't do this you will not be allowed to work or even fired.)

. . .

On 12/24/2021 Home Depot terminated me for the cause they stated that I threatened them for giving them the above 18 U.S. Code § 242.

*Id*. at 5–6. (emphasis and errors in original). Based on these facts, Wells filed suit in state court citing as a legal basis for his claim 18 U.S.C. § 242.[2] Dkt. No. 1-3 at 1.

Because three Defendants have raised an absence of personal jurisdiction, the undersigned begins there before addressing this Court's subject matter jurisdiction, and the dismissal of Wells' claims under Rule 12(b)(6).

---

[2] Additionally, although Wells' state court petition is cryptically couched in references to the fictional trusts of the sovereign citizen movement, he appears to seek through this suit "punitive damages of $44.15 billion worth of one ounce silver 99.9% pure medallions as issued by The Republic of Texas, at your conversion cost." Dkt. No. 1-2 at 10. Wells also states that, "The Army will be asked to attend this court case and will carry out the judgment immediately after it is rendered by the jury." *Id.*

II.      DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(2)

Where "a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999). Here, while the subject matter jurisdiction issues may not be novel or complex, they are more involved than the straightforward personal jurisdiction issue.

Defendants Menear, Decker, and McPhail (the Georgia Defendants) move to dismiss Wells' claims against them because he "failed to establish . . . that personal jurisdiction exists" over the three. Dkt. No. 8 at 2. The Georgia Defendants argue that Wells' Complaint "does not contain a single factual allegation that . . . [they] committed any actions with respect to [Wells] in Texas, much less any factual allegations that any such conduct gave rise to [Wells'] present claims[.]" *Id.* at 2–3. Finally, the Georgia Defendants observe that Wells "makes one, fleeting mention to the Georgia Defendants, when he alleges '[o]n 12/24/2012[,] Home Depot terminated me . . . Zachary Sulruld['s] superiors Craig Menear, Ted Decker, Richard McPhail [sic] . . . concurred with this action.'" *Id.* at 3.

As best the Court can determine, Wells does not respond to this argument in any of his filings, and the time to do so has now passed. The Court first discusses the legal standard for determining a 12(b)(2) Motion before recommending that Wells' claims against the Georgia Defendants be dismissed.

### A.  *Legal standards—personal jurisdiction*

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident." *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). In determining whether the plaintiff has met this burden, courts must accept all uncontroverted allegations in the complaint as true. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868–69 (5th Cir. 2001). But, this standard "does not require the court to credit conclusory allegations, even if uncontroverted." *Id.* at 869.

The exercise of personal jurisdiction over a non-resident defendant is proper when: (1) the non-resident is subject to jurisdiction under the laws of the state in which the court sits; and (2) the exercise of jurisdiction over the defendant comports with the due process requirements of the United States Constitution. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–74 (1985); *Panda Brandywine Corp.*, 253 F.3d at  867 (per curiam). The Fifth Circuit has held that "the Texas long-arm statute extends to the limits of federal due process," thus these two steps "collapse[] into one federal due process analysis." *Bulkley & Assocs.*, *v. Dep't. of Indus. Relations*, 1 F.4th 346, 351 (5th Cir. 2021).

"Exercising personal jurisdiction over a nonresident defendant is consistent  with due process when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine Corp.*, 253 F.3d at 867; *Companion*

*Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559 (5th Cir. 2013) (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987)).

The contacts a defendant has with the forum state can give rise to either general or specific personal jurisdiction. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). For general jurisdiction, a plaintiff must establish that the defendant's contacts with the forum state are "so 'continuous and systematic' as to render them essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Contacts that support general jurisdiction are so substantial that a nonresident "would expect to be sued in the state for any claim, including one not arising from his in-state activities." *Taylor v. Alex. Brown & Sons Inc.*, No. 3:02-cv-0818-P, 2002 WL 31245369, at *5 (N.D. Tex. Oct. 2, 2002).

Specific jurisdiction is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919 (citations omitted). Courts " have articulated a three-step analysis for [determining] specific jurisdiction: '(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

"The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court." *Id.* (citations omitted) (internal quotation marks omitted). When determining whether the exercise of jurisdiction satisfies traditional notions of fair play and substantial justice, the Court balances "the burden on the defendant having to litigate in the forum; the forum state's interest in the lawsuit; the plaintiff's interests in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citations omitted).

### B. *Personal Jurisdiction over the Georgia Defendants*

Wells has failed to allege facts establishing personal jurisdiction over the Georgia Defendants. As Defendants note (*see* Dkt. No. 8 at 3), Wells' sole reference to the Georgia defendants is his statement that they "concurred with [his termination]." Dkt. No. 1-2 at 6. This allegation is insufficient to establish either continuous and systematic contacts by the Georgia Defendants with the state of Texas or the required minimum contacts. The Georgia Defendants' concurrence in Wells firing, assuming it occurred, is not a contact with the state of Texas showing that they should have anticipated litigation in the state. And even if Wells had alleged more contacts from the Georgia Defendants related to their business with the Abilene Home Depot, the fiduciary-shield doctrine "precludes personal jurisdiction over corporate officers when an officer's only contacts with the forum state are in a

corporate capacity." *Maxum Enters., LLC v. Auto. Fleet Enters., Inc.*, No. 3:18-CV-0687-B, 2018 WL 3417234, at *2 (N.D. Tex. July 13, 2018).

Moreover, none of the factors involved in assessing "fair play and substantial justice" weigh in favor of exercising personal jurisdiction over the Georgia Defendants, nor does Wells claim otherwise.

For these reasons, the undersigned finds that this Court lacks personal jurisdiction over Defendants Menear, Decker, and Mephail, and RECOMMENDS that the Court grant the Defendants Motion to Dismiss these Defendants under Rule 12(b)(2).

### III.   FEDERAL QUESTION JURISDICTION

The next jurisdictional issue is one of subject matter jurisdiction. And because jurisdiction must always be established as a threshold matter, the undersigned now addresses the Court's subject matter jurisdiction over the case before addressing the Defendants' Motion to Dismiss.

#### A. *Legal standards—federal question*

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any state-court action as to which a federal district court would have original jurisdiction. But the *removing party* bears the burden of establishing that federal subject matter jurisdiction exists. *See Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

"[B]ecause the effect of removal is to deprive the state court of an action properly before it, removal raises significant federalism concerns . . . which mandate strict construction of the removal statute." *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365–66 (5th Cir. 1995). Any doubts about whether removal jurisdiction is proper must

therefore be resolved against the exercise of federal jurisdiction. *See Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000). Accordingly, remand is proper when any doubt exists regarding federal jurisdiction. *See Cyr v. Kaiser Found. Health Plan of Tex.*, 12 F. Supp. 2d 556, 565 (N.D. Tex. 1998).

Federal question jurisdiction under Section 1331 "exists when 'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). "A federal question exists 'if there appears on the face of the complaint some substantial, disputed question of federal law.'" *In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)).

In removed actions, the well-pleaded complaint doctrine requires that a federal question be present *on the face* of the plaintiff's complaint as of the time of removal. *See* 14C FED. PRAC. & PROC. JURIS. § 3722.4 (Rev. 4th ed.); *Bernhard v. Whitney Nat. Bank*, 523 F.3d 546, 551 (5th Cir. 2008). In other words, whether a case arises "'under the Constitution or a law or treaty of the United States . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim . . . unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Franchise Tax Bd.*, 463 U.S. at 10 (quoting *Taylor v. Anderson,* 234 U.S. 74, 75–76 (1914)). Factual allegations that could potentially be construed as a federal question

are not enough to provide this Court with jurisdiction.[3] *Barrett v. Bank of Am., N.A.*, No. 3:14-CV-0870-D, 2014 WL 2217337, at *2 (N.D. Tex. May 29, 2014).

A federal court must not assume that it has jurisdiction. Rather, "the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference." *Getty Oil Corp. v. Ins. Co. of N.A.*, 841 F.2d 1254, 1259 (5th Cir. 1988) (citing *Ill. Cent. Gulf R. Co. v. Pargas, Inc.,* 706 F.2d 633, 636 & n.2 (5th Cir. 1983)); *see also MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) ("Because federal courts have limited jurisdiction, parties must make 'clear, distinct, and precise affirmative jurisdictional allegations' in their pleadings." (quoting *Getty Oil*, 841 F.2d at 1259)).

For these reasons, the Court examines its subject matter jurisdiction over this removed action.

### B.  *Subject Matter Jurisdiction over Wells' claims*

The Court first discusses the Defendants' Notice of removal and the Court's decision to order briefing on the purported federal question in this case and then discusses whether Defendants ultimately carried their burden of establishing this Court's subject matter jurisdiction over Wells' claims.

### 1.  Defendants' Notice of Removal

After Wells filed suit in state court, Defendants Zachary Sumruld, Dianna Clapp, Craig Menear, Ted Decker, Richard McPhail, and Sherre Maclin removed the case to

---

[3] Although the Court must construe pro se pleadings liberally, the plaintiff must still properly invoke the Court's limited federal jurisdiction. *Hooks v. Army & Air Force Exch. Serv.*, 944 F. Supp. 503, 505–06 (N.D. Tex. 1996).

federal court claiming this Court has original jurisdiction because Wells' "suit involves questions of federal law." Dkt. No. 1 at 2. Specifically, Defendants provided the following as their basis for removal:

> This action may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441, as Plaintiff brings a claim under the laws of the United States. Specifically, in his Petition, Plaintiff alleges actions by Defendants that he claims violates 18 U.S. Code § 242 and some kind of federal "Trust" based on an Executive Order of President Trump. *See Plf.'s Petition pp.* 1, 2, 4, 6. Plaintiff also cites to several other federal laws and documents such as "HIPA [*sic*] Act of 1996," the "Declaration of Independence," other federal lawsuits filed by Plaintiff, and holdings of the Supreme Court of the United States.

Dkt. No. 1 at 2. Defendants conclude their Notice of Removal by stating that "[b]ased upon the federal question raised by Plaintiff, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, and removal is proper pursuant to 28 U.S.C. §§ 1441(a)-(c)." *Id.*

In the Civil Cover Sheet filed with their Notice of Removal, Defendants represent the nature of Wells' suit as "Other Civil Rights" and describe the cause of action as: "Plaintiff alleges violations of 18 U.S.C. 242; Defendants removing based on federal question." Dkt. No. 1-3 at 1. And in Defendants' Supplemental Civil Cover Sheet filed the same day, they describe Wells' claims as those in which "Plaintiff alleges violations of 18 USC 242." Dkt. No. 1-4 at 2.

Thus, as of the filing of the Notice of Removal, the main thrust of Defendants' argument for federal question jurisdiction was Wells' claim under 18 U.S.C. § 242. That said, as set out above, Defendants' Notice of Removal also briefly mentions that Wells appears to make a claim under "some kind of federal 'Trust,'" "several other federal laws and documents such as [HIPAA]," "the 'Declaration of Independence,'" and other

unspecified "federal lawsuits filed by [Wells], and holdings of the Supreme Court[.]" Dkt. No. 1 at 2.

Three weeks after filing the Notice of Removal, Defendants filed their Motion to Dismiss. Dkt. No. 8. Through that Motion, Defendants urge that, "[t]he only *arguably identifiable* claim in the [Wells'] Complaint is an allegation that Defendants violated 18 U.S.C. § 242 (deprivation of rights under color of law)." *Id.* at 5. (emphasis added). And, notably, Defendants Motion to Dismiss addresses *only* Wells' § 242 claim, but not his claims based on "some kind of federal 'Trust,'" or HIPAA, or any other federal law or basis.

As explained above, in removed actions, the well-pleaded complaint doctrine requires that a federal question be present *on the face* of the plaintiff's complaint as of the time of removal. *See* 14C FED. PRAC. & PROC. JURIS. § 3722.4 (Rev. 4th ed.); *Bernhard*, 523 F.3d at 551. This must be determined by looking only at Plaintiff's statement of claims *Franchise Tax Bd.*, 463 U.S. at 10 (quoting *Taylor,* 234 U.S. at 75–76).

With the above principles and pleadings in mind, including Defendants' concession, albeit fleeting, that "[t]he only arguably identifiable claim" in Wells' removed complaint is one under the criminal statute § 242, the undersigned *sua sponte* addressed this Court's jurisdiction before considering Defendants' Motion. And after finding Defendants failed to carry their burden on this issue, recommended through the now-withdrawn FCR that this case be remanded to state court. *See* Dkt. No. 10. As explained above, the undersigned later withdrew that FCR in response to Defendants' objection that they did have an opportunity

to more fully brief federal question jurisdiction (*see* Dkt. No. 11) and ordered the parties to file supplemental briefing on that issue. *See* Dkt. No. 12.

Defendants then filed their Opening Brief on Substantiality of Federal Questions (the supplemental briefing), Dkt. No. 15, now arguing that Wells' claims under both § 242 and HIPAA have an arguably "plausible foundation," but conceding that his trust claims, and presumably his other "federal" claims, do not. [4] *Id.* at 6.

The undersigned now finds, as explained below, that Wells' § 242 claim is not sufficiently substantial, plausible, or non-frivolous to support this Court's exercise of subject matter jurisdiction.[5]

2.  <u>Defendants have failed to establish this Court's subject matter jurisdiction based on Wells' § 242 claim.</u>

Through their supplemental briefing, Defendants argue that because claims under § 242 and HIPAA appear on the face of Wells' complaint, "'[d]ismissal for lack of subject matter jurisdiction is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme

---

[4] After the undersigned issued the FCR finding Defendants failed to demonstrate a federal question on the face of Wells' pleadings, and recommending remand, Defendants' characterization of Wells' federal claims evolved from asserting that § 242 was "the only arguably identifiable claim," (Dkt. No. 8 at 5) to urging that (1) Well's' "complaint asserts three claims that expressly arise under federal law," including "federal trust law," (2) if Defendants did indeed violate the terms of a federal trust, then they necessarily violated the laws creating that trust," and (3) "the complaint sets forth on its face three expressly pleaded claims arising under federal law," and "Defendants expressly based their removal on all three of these asserted causes of action[.]" Dkt. No. 11 at 10–11. As explained above, Defendants have now rested on the position that there are only two arguable claims, those under § 242 and HIPAA.

[5] The Court considers the supplemental briefing for purposes of determining subject matter jurisdiction in this case only. This briefing is not used by the Court in conducting a 12(b)(6) analysis or its analysis on Defendants' Alternative Motion for More Definite Statement. *See Wolcott v. Sebelius,* 635 F.3d 757, 763 (5th Cir. 2011) (When ruling on a 12(b)(6) motion, the Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation omitted) (internal quotation marks omitted).

Court decision." Dkt. No. 15 at 8–9 (citing *Young v. Hoseman*, 598 F.3d 184, 188 (5th Cir. 2010) (quoting in turn *Bell v. Health-Mor*, 549 F.2d 342, 344 (5th Cir. 1977)).

Defendants then urge that "'the pleading burden to establish federal question jurisdiction is low' and that 'only claims patently without merit . . . justify the district court's dismissal for want of jurisdiction.'" *Id.* at 9 (quoting *Young*, 598 F.3d at 188). This argument is supported with various other formulations of the fundamental concept— undisputed here—that federal claims that plainly appear on the face of pleadings, that are plausible and cognizable, should not be dismissed on the basis that they are wholly frivolous or too insubstantial to support federal subject matter jurisdiction. *See id.* at 8–9. Further, Defendants argue—again without disagreement here—that "the substantiality rule imposes a lower burden on a complaint than Rule 12(b)(6) does." *Id.* at 10. But then Defendants conclude that "the substantiality rule precludes jurisdiction only in rare circumstances" [and] "[t]his is not one of them." *Id.* at 11. With this, the undersigned disagrees. None of Wells' filings appear to address these issues.[6]

Even accepting Defendants' criticism of the substantiality rule, inspired by Justice Rehnquist's dissent in *Yazoo County Industrial Development Corp. v. Suthoff*, *see* Dkt. No. 15 at 10-11, it is not beyond the pale to describe Wells' pleadings, including their assertion of a claim under Title 18, as presenting relatively rare circumstances. As noted elsewhere,

---

[6] Since the Court ordered the parties to submit supplemental briefing, Wells filed three Notices, a Motion for Injunctive Relief, and a restated Motion for Injunctive Relief. Dkt. Nos. 13, 14, 16, 17, 19. All of which are difficult to decipher. The only discernable statement Wells makes related to the Court's federal jurisdiction is his statement that "there are two issues here. One being a Civil matter that needs you to reprimand [sic] this case back down to the District Court. The other is that Defendants violated a Federal Law, which you can't rule on now, but you refer it to a Federal Prosecutor . . . ." Dkt. No. 16 at 4. Wells fails to elaborate or describe the purported "civil matter."

Defendants have struggled with whether those pleadings present only one "arguably identifiable claim," "three expressly pleaded claims," or, finally, whether only his "Section 242 and HIPAA claims meet [the] minimal burden" required for a plausible foundation. *See* Dkt. Nos. 8 at 5, 11 at 10—11, and 15 at 6.

Additionally, the undersigned observes that the principal cases cited by Defendants in support of their current position that Wells' § 242 and HIPAA claims are non-frivolous, substantial, and plausible are not analogous—in terms of frivolity, substantiality, and plausibility—to Wells' claims. *Young* involved two convicted felons who claimed § 241 of the Mississippi Constitution granted felons, who were otherwise qualified to vote, the right to vote in presential elections, and that the state's denial of that right violated the Equal Protection Clause of the Fourteenth Amendment and the National Voter Registration Act. *Young*, 598 F.3d at 184. With that context, and while affirming on other grounds the district court's dismissal of the plaintiffs' claims, the Fifth Circuit held that those claims were "neither frivolous nor clearly foreclosed by law," and therefore supported subject matter jurisdiction. *Id*. at 189.

*Bell* involved plaintiffs who purchased vacuum cleaners sold door-to-door under a referral sales agreement on the promise of referral fees which later proved far below their expectations. 549 F.3d at 344. They brought a class action claiming the referral sales agreement arrangement was akin to a pyramid scheme and that it violated the 1933 Securities Act, the 1934 Securities Exchange Act, the Federal Trade Commission Act, and federal criminal mail fraud and lottery statutes. *Id*. The district court *sua sponte* dismissed all claims for lack of subject matter jurisdiction. In reversing the dismissal of only the

Securities Acts claims, the Fifth Circuit held those claims were "not plainly insubstantial or frivolous on their face." *Id*. at 345.

Defendants "submit that the difference between [Wells'] Section 242 and HIPAA claims, on one hand, and his trust claim, on the other, exemplifies the distinction between claims with and without a plausible foundation." Dkt. No. 15 at 13. The undersigned agrees with this distinction at least as to the HIPAA claim. But while reasonable minds can and do disagree on the line between plausible and implausible claims, it strains reason to draw that line so that Wells' § 242 claim is on the same side as those that supported subject matter jurisdiction in *Young* and *Bell,* or even the HIPAA claim.

Defendants suggest that because Wells "has expressly alleged that Defendants violated two federal statutes[,]" that provides a sufficient subject matter jurisdictional hook because "a court will need to decide whether [Wells] has a right of action under the statutes and, if so, whether Defendants violated them." *Id.* at 13. Again, the undersigned agrees with this insofar as Wells' HIPAA claim is concerned because "[w]hether or not HIPAA provides for a private cause of action is a question of statutory interpretation," and because "HIPAA has no express provision creating a private cause of action, . . . [courts] must determine if such is implied within the statute." *Acara v. Banks*, 470 F.3d 569, 570–71. But in construing HIPAA, the Fifth Circuit in *Acara* concluded "that Congress did not intend for private enforcement of HIPAA" and thus held there was "no federal subject matter jurisdiction over Acara's asserted claims." *Id*. at 571.

But unlike HIPAA, § 242 leaves no room for construing an implied right of action, and Defendants provide no authority otherwise. Because Congress left open the question

of an implied private right of action in HIPAA, there was at least an arguable basis for a private party to urge that the construction be made in their favor. As the Supreme Court said in *Steel*, "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another,'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)).

In contrast, it is beyond dispute that there is no private right to enforce federal criminal statutes, and no federal court has held otherwise. This is not just a matter of statutory construction. It is a bedrock principle of federal criminal jurisprudence. Congress conferred original and exclusive jurisdiction on the district courts "of all offenses against the laws of the United States." TITLE 18, UNITED STATES CODE, SECTION 3231. "As the Supreme Court reaffirmed in *United States v. Cotton*, this means that the district court's subject matter jurisdiction extends to 'all *crimes cognizable under the authority of the United States*.'" *United States v. Scruggs*, 691 F.3d 660, 667 (5th Cir. 2012) (emphasis added) (quoting *Cotton*, 535 U.S. 625, 631 (2002)). As the Fifth Circuit has explained:

> Subject matter jurisdiction, or "the court's power to hear a case," is straightforward in the criminal context. Title 18 U.S.C. § 3231 grants "original jurisdiction ... of all offenses against the laws of the United States" to the district courts. To invoke that grant of subject matter jurisdiction, an "*indictment* need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute." That is the extent of the jurisdictional analysis: "[A] federal criminal case is within the subject matter jurisdiction of the district court if the indictment charges ... that the defendant committed a crime described in Title 18 or in one of the other statutes defining federal crimes."

*United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013) (emphasis added) (citations omitted).

Appellate courts "determine whether a district court had subject matter jurisdiction in a criminal case by looking at the indictment or information." *Scruggs*, 691 F.3d at 667–68. Absent the United States' filing of an indictment or other proper charging instrument alleging that a person committed an "*offense*[] against the law of the United States," there can be no § 3231 jurisdiction, and hence no power to decide whether Wells' employer violated 18 U.S.C. § 242. This does not leave room for Wells' § 242 claim to be characterized as arguable or plausible. Only after § 3231 jurisdiction properly attaches does a district court acquire the power to decide whether the allegation in an indictment supports a proper offense or is otherwise defective. *Cotton*, 535 U.S. at 625. Here, of course, there is no indictment or other proper charge of an offense against the laws of the United States, hence no jurisdiction.

As Defendants point out in their supplemental briefing, the Supreme Court has instructed that "[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co.*, 523 U.S. at 89. Thus, "[d]ismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, *or otherwise completely devoid of merit as not to involve a federal controversy*.'" *Id.* (emphasis added) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)).

19

It is one thing to acknowledge, as every federal court to consider the issue has, that federal courts have the power to decide whether Congress left an implied private right of action under HIPAA. It is quite another to conclude that the only obstacle to private citizens filing federal criminal charges against one another is the manner in which federal courts construe the criminal statute. Here, Wells' § 242 claim is clearly insubstantial, implausible, and *completely devoid of merit,* and the Court should dismiss the claim for lack of subject matter jurisdiction.[7]

IV.    DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)

As explained above, Defendants Motion to Dismiss addresses only Wells' § 242 claim, and if the Court accepts the undersigned's above recommendation to dismiss this claim for lack of subject matter jurisdiction, Defendant's Motion to dismiss the same claim for failure to state a claim would then be moot. But in the event the Court finds that Wells' § 242 claim is sufficient to support subject matter jurisdiction, the undersigned next addresses the merits of Defendants' Motion to Dismiss.

### A.  *Legal standards—failure to state a claim*

Dismissal for failure to state a claim under Rule 12(b)(6) "turns on the sufficiency of the 'factual allegations' in the complaint.'" *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims

---

[7] Defendants argue in their objections to the now-withdrawn FCR that Wells "is not attempting to institute a prosecution" but "is asserting a private action against private citizens under Section 242." Dkt. No. 11 at 15. For reasons explained above, this is a distinction without a difference in terms of this Court's subject matter jurisdiction because this Court lacks the power to construe either claim under § 242. Moreover, Wells' motions for injunctive relief make clear that he is seeking to have the Defendants prosecuted criminally. *See* Dkt. Nos. 17, 19.

asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief, the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *Johnson*, 574 U.S. at 11–12 (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

Courts accept well-pleaded factual allegations as true, viewing them in the light most favorable to the plaintiff. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). This means the factual allegations, while not required to be detailed, must amount to more than mere labels, conclusions, or a statement of the legal elements of a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Chhim*, 836 F.3d at 469.

For claims to be substantively plausible, a plaintiff need not establish that the pleaded facts probably occurred as alleged, but the facts must allow the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc*., 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678–79). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim*, 836 F.3d at 469 (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

When evaluating a complaint under these standards, courts liberally construe the pleadings of pro se plaintiffs, holding their complaints to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But

"liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

### B.  Applying the 12(b)(6) standard to Wells' § 242 claim

Wells believes that Defendants violated § 242 by making him choose between the loss of his job or being subjected to bodily harm—specifically, COVID-19 testing or the vaccine. *See* Dkt. No. 1-2. However, § 242 is a criminal statute and criminal statutes do not convey a private right of action. *See, e.g., Johnson v. Fed. Bureau of Investigation*, No. 16-1337, 2016 WL 9776489, at *3 (S.D. Tex. Nov. 17, 2016) (holding no private right of action under 18 U.S.C. § 241) (citation omitted); *Lopez v. Dallas Ministry Ctr.*, No. 3-12-0606-L, 2012 WL 1413526, at *2 (N.D. Tex. Mar. 9, 2012), *rec. accepted* 2012 WL 1423652 (N.D. Tex. Apr. 24, 2012) ("There is no private right of action for criminal conspiracy under 18 U.S.C. § 241, or the deprivation of rights under 18 U.S.C. § 242.")

(citation omitted). For a private right of action to exist under a criminal statute, there must be "a statutory basis for inferring that a *civil* cause of action of some sort lay in favor of someone." *Cort v. Ash*, 422 U.S. 66, 79 (1975), *overruled in part by Touche Ross & Co. v. Redington*, 442 U.S. 560 (1979) (emphasis added); *see Suter v. Artist M.*, 503 U.S. 347, 363 (1992) (the party seeking to imply a private right of action bears the burden to show that Congress intended to create one).

The existence of a statutory private cause of action does not exist in the criminal statute cited by Wells, whether expressly or by implication. Rather, Congress provided a civil counterpart to § 242 in 42 U.S.C. § 1983, discussed below. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929, n.13 (1982). Thus, he cannot state a claim to relief under § 242, and that claim should be dismissed under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for frivolousness and failure to state a claim. [8]

But the analysis of Wells' Complaint does not end here. Courts "must construe the pleadings of pro se litigants liberally," *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). And because it appears from a liberal construction of Wells' factual allegations that he believes—if not plausibly then at least not wholly frivolously—that his federally protected civil rights were violated when he was terminated by his employer, the Court

---

[8] Courts have noted that relying entirely on a federal criminal statute to support a suit deprives the court of Subject Matter Jurisdiction, stating that "[i]t is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is criminal."*Ennis Transp. Co. Inc. v. Richter*, No. 3:08-CV-2206-B, 2009 WL 464979, at *2 (N.D. Tex. Feb. 24, 2009) (citing *Pierre v. Guidry*, 75 Fed. Appx. 300, 300 (5th Cir. 2003).

must consider whether he has stated a claim under the potentially applicable "civil" Civil Rights statutes, including the civil analogues to § 242.[9]

## V.    WELLS' REMAINING CLAIMS

While Wells cannot maintain a claim under 18 U.S.C. § 242, which makes it a crime for a person acting under color of any law to willfully deprive a person of a right or privilege protected by the Constitution or laws of the United States, there are several potential civil analogs to § 242. And as explained above, dismissal for failure to state a claim under Rule 12(b)(6) turns on the factual sufficiency of the plaintiff's allegations such that if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility," the claims should not be dismissed merely because the plaintiff fails to articulate the proper legal theory that otherwise makes those facts actionable in court. *See Johnson*, 574 U.S. at 11–12 (citing FED. R. CIV. P. 8(a)(2)–(3), (d)(1), (e)).

As explained above, because it reasonably appears from Wells' factual allegations that he believes his civil rights were violated by his employer, the Court must consider whether he has stated a claim under the potentially applicable civil rights statutes. Specifically, Wells appears to claim that federal law protected his right to refuse testing and vaccination for COVID-19, and that when he asserted that right, he was terminated from his employment.[10] While Wells' articulation of the precise federal laws at issue

---

[9] A federal district court may "consider the sufficiency of the complaint on its own initiative." *Lozano v. Ocwen Federal Bank, FSB*, 489 F.3d 636, 642–46 (5th Cir. 2007) (citations omitted).

[10] The Court notes that Wells' pleadings support a conclusion that Wells was fired because Defendants felt threatened by Wells when he gave them a criminal statute that discusses individuals being sentenced to death. Wells admits that "Home Depot terminated me for the cause they stated that I threatened them for giving them the above 18 U.S. Code § 242." *Id*. at 6. Wells does not deny that he gave his supervisors at Home Depot a statute that included a reference to being sentenced to death. *See id.* However, in one of Wells' Notices he says this was not the actual reason for firing him, claiming "that false claim was obviously just a twisting of a justification for the subsequent wrongful termination

suffers from the legal fictions and fantasies of the sovereign citizen movement, this alone does not render his factual allegations non-actionable. But the undersigned will begin with Wells' stated legal theories.

As best the undersigned can determine, Wells claims that his right to refuse testing and vaccination is rooted in some combination of HIPAA, former President Trump's Executive Order 13958 (establishing the President's Advisory 1776 Commission), and Governor Abbott's Executive Order No. GA-38 (which, among other things, purports to blunt COVID-related mandates that infringe on "the ability of Texans to preserve livelihoods"). Additionally, although not expressly raised by Wells, the undersigned considers whether he has stated a claim under 42 U.S.C. 1983's civil rights protections and Title VII's prohibitions against unlawful workplace discrimination and retaliation. And because the language of § 242, specifically cited by Wells, closely tracks the § 1983's language, the undersigned starts there.

### a. Section 1983

A construction of Wells' claim under 42 U.S.C. § 1983 fails. To establish a prima facie case under § 1983, a plaintiff must establish "that they were deprived of a right or interest secured by the Constitution and laws of the United States, and second, that the deprivation occurred under color of state law." *Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

---

on December 24, 2021, as no current policies of Home Depot had been or were being broken by" him. Dkt. No. 13 at 3.

In describing his supervisor's directive to submit to testing for COVID-19, Wells states that "what he said to me is a threat to me to do physical bodily harm and up to death." Dkt. No. 1-2 at 6. Wells goes on to say that the threat of physical harm that COVID-19 testing and the vaccine would impose upon him violates his right to "happiness in [his] being, life, [and] liberty" guaranteed by the United States Constitution. *Id.*

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive a person of life, liberty or property . . . ." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994). Within this clause, is an individual's "right to be free of state-occasioned damage to [their] bodily integrity . . . ." *Randolph v. Cervantes,* 130 F.3d 727, 730 (5th Cir. 1997). This includes a right to refuse unwanted medical treatment. *See Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990). Based on Wells' Complaint, he believes that Defendants threatened his right to bodily integrity by requiring him to submit to testing or receive the vaccinee to keep his job.

But Wells does not allege the involvement of a state actor, the *sine qua non* of a § 1983 claim. Rather, his claim rests solely on the actions of the employees of a private employer, and consequently fails to establish jurisdiction based on a federal question. *See Medlock v. Note One Auto Sales*, No. 3:18-CV-1881-L-BN, 2018 WL 5722681, at *2 (N.D. Tex. Aug. 13, 2018), *report and rec. adopted,* 2018 WL 5831457 (N.D. Tex. Nov. 7, 2018) ("where a plaintiff 'does not allege facts demonstrating that [a defendant] acted under color of state law,' he fails 'to plead and establish subject-matter jurisdiction based on the existence of a federal question.'") (quoting *Mitchell v. Clinkscales*, 253 F. App'x 339, 340 (5th Cir. 2007)).

For these reasons, the undersigned finds that Wells fails to state a claim under § 1983 and any such claim should be dismissed without prejudice under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for frivolousness and failure to state a claim.[11]

### b. Title VII

Wells' allegations, relating as they do to his termination from private employment on an allegedly illegal basis, might find legal support in Title VII's anti-retaliation protections. "To present a *prima facie* case of retaliation under either Title VII or § 1981, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Ackel v. Nat'l Communications, Inc.* 339 F.3d 376, 385 (5th Cir. 2003) (citations omitted) (internal quotation marks omitted).

The purpose of Title VII is "to prohibit discrimination on the basis of race, gender, and other legislatively enumerated grounds. It was not enacted to promote general fairness in the workplace, or . . . to protect against the indiscriminate firing of employees."

---

[11] The undersigned notes that while the failure to state a claim does not necessarily mean that claim is also frivolous, here Wells' purported claims under § 1983, HIPAA, and any purported executive order or trust satisfies both standards. *See Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

*Alkhawaldeh v. Dow Chemical Co*., 851 F.3d 422, 427 (5th Cir. 2017) (citations omitted) (internal quotation marks omitted).

Here, Wells' factual allegations do not support, nor does he allege, that he engaged in any activity protected by Title VII or that he was a member of a protected class. Instead, his claims focus on his right to refuse threatened harms to his body.

Thus, any claim construed under Title VII should be dismissed *sua sponte* and without prejudice under Rule 12(b)(6) for failure to state a claim.

### c. Health Information Portability and Accountability Act (HIPAA)

Wells briefly mentions HIPAA in his Complaint, stating that Defendants acts were "also [a] violation of the HIPA Act of 1996 to protect a worker from potential harm from a political body." Dkt. No. 1-2 at 6. As stated above, Defendants fail to address this claim in their Motion to Dismiss, despite asserting it as a basis for removal.

The Fifth Circuit has instructed that HIPAA, which provides civil and criminal penalties for improper disclosure of medical information, has no express provision creating a private cause of action, nor is one implied within the statute. *Acara v. Banks,* 470 F.3d 569, 571–72 (5th Cir. 2006) ("We hold there is no private cause of action under HIPAA and therefore no federal subject matter jurisdiction over Acara's asserted claims."). The statute can be enforced only by the Secretary of Health and Human Services. *Id.* (citing 42 U.S.C. § 1320d–5).

Thus, Wells cannot state a claim under HIPAA, and that claim should be dismissed *sua sponte* under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for frivolousness and failure to state a claim.

### d.  Executive orders and trusts

Wells references some form of a United States trust as support for his claim that his rights were violated as well as referring to Executive Orders that he believes Defendants violated. *See* Dkt. No. 1-2. To the extent Wells purports to make a claim under the Executive Orders or some type of trust, this Court lacks jurisdiction for any such claim, and they should be dismissed.

As explained above, the legal fiction presented by Wells in his Complaint that he is protected by some type of trust is not based in law but in the fantasies of the sovereign citizen movement. There is no jurisdiction in this Court for fictitious claims. *See Boeing Co. v. United States*, 968 F.3d 1371, 1383 (Fed. Cir. 2020) (stating that "[a]llegations of subject matter jurisdiction, to suffice, must satisfy a relatively low standard," but also noting that "essentially fictitious" claims do not meet the standard (quoting *Shapiro v. McManus*, 577 U.S. 39, 45–46 (2015))). Like other monetary claims of sovereign citizens that this court has considered, Wells' claim must be dismissed for lack of jurisdiction. *See, e.g., Ammon*, 142 Fed. Cl. 210, 220 (2019) (dismissing sovereign citizen redemption claim *sua sponte* for lack of jurisdiction); *Gravatt v. United States*, 100 Fed. Cl. 279, 285, 288 (2011) (dismissing, *sua sponte*, sovereign citizen claim founded on fictitious trust fund account with the United States Department of the Treasury for lack of jurisdiction).

As for the Executive Orders, federal Executive Order 13958 does not mention COVID-19 testing or vaccination, or otherwise provide a legal basis for a private right of action. *See* Executive Order 13958. And Executive Order GA-38, while specifically addressing the State of Texas' response to the COVID-19 pandemic, does not purport to

prohibit a private employer like Home Depot from testing its employees for COVID-19, particularly in the absence of some allegation that Home Depot was receiving funds from the State of Texas. *See* EXECUTIVE ORDER GA-38 at 2.

Liberally construed, Wells' stating that defendants [violated a trust or executive order] does not itself implicate a substantial, disputed question of federal law. Dkt. No. 1-2; *see, e.g., Butler v. Dallas Area Rapid Transit,* 762 F. App'x 193, 194 (5th Cir. 2019); *cf. Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019) ("Some claims are 'so insubstantial, implausible . . . or otherwise completely devoid of merit as not to involve a federal controversy.' Federal courts lack power to entertain these 'wholly insubstantial and frivolous' claims." (quoting *Oneida Indian Nation of N.Y. v. Oneida Cnty.*, 414 U.S. 661, 666 (1974), then *Southpark Square Ltd. v. City of Jackson*, 565 F.2d 338, 343–44 (5th Cir. 1977))).

Thus, the Court should dismiss *sua sponte* and without prejudice any claims under these theories under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for frivolousness and failure to state a claim.

### e. The "holdings of the Supreme Court"

Lastly, the Court considers whether the Supreme Court holding referenced by Wells through a website and by Defendants in their Notice of Removal provides any basis for a cause of action here. This "holding[] of the Supreme Court" referenced by Defendants in their Notice of Removal appears to be *Nat'l Fed'n of Indep. Bus. v. Depart. of Labor, Occupational Safety & Health Admin.*, 142 S.Ct. 661, (2022) (per curiam). There, the Supreme Court ruled that the OSHA mandate that private employers with at least 100

employees—like Home Depot—exceeded the U.S. Department of Labor's Occupational Safety and Health Administration's (OSHA) statutory authority and stayed enforcement of the mandate. OSHA later withdrew the mandate. OSHA issued the mandate to be effective November 5, 2021 (*see* 86 Fed. Reg. 61402 (2021)). Wells states that he was called in and informed of the vaccine mandate on December 22, 2021. Dkt. No. 1-2 at 5. Wells was terminated on December 24, 2021. *Id*. at 6. And the Supreme Court issued the stay on January 13, 2022. *Nat'l Fed'n of Indep. Bus.*, 142 S.Ct at 667. If one stops here, the timing does indeed appear to support a connection between the OSHA mandate and Wells' claims.

But even a connection between Wells firing and the OSHA mandate fails to provide Wells with a cause of action. As discussed above, Wells does not claim that his refusal to follow Home Depot's COVID-19 policies derive from his membership in a protected class under Title VII. And Wells does not allege that Home Depot's implementation of COVID-19 policies that modeled a federal mandate turned Home Depot into a federal actor. If true, Home Depot's firing of Wells based on his failure to follow policies that were designed to model a federal mandate that was later withdrawn does not, by itself, support a cause of action against Home Depot for a violation of Wells' civil rights.

For these reasons, Wells has failed to state a claim under any holdings of the Supreme Court, or other common law, and any such claim should be dismissed *sua sponte* and without prejudice under Rule 12(b)(1) or Rule 12(b)(6).

### f.  State law wrongful termination claim

Finally, to the extent Wells is attempting to assert a state law wrongful termination claim, the Court should decline to exercise supplemental jurisdiction over any remaining

state law claims. Ordinarily, when the federal claims are dismissed before trial, the court may decline to exercise supplemental jurisdiction and dismiss pendent state claims as well. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996); *St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (citing 28 U.S.C. § 1367(c)). The undersigned recommends the Court dismiss *sua sponte* and without prejudice any pendant state claims here.

## VI.    DEFENDANTS' ALTERNATIVE MOTION FOR MORE DEFINITE STATEMENT

Defendants move in the alternative for a more definite statement. Dkt. No. 8 at 6–7. In support of this Motion, Defendants state that Wells' Complaint "makes only a conclusory allegation that Plaintiff has been wronged by the Defendants, without providing any legal or factual support." *Id*. at 6. And, "[a]s a result, Defendants cannot frame a responsive pleading[.]" *Id*.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a complaint set forth a "short and plain statement" of claims. FED. R. CIV. P. 8(a)(2). If a complaint is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response," the opposing party "may move for a more definite statement of [that] pleading" under Rule 12(e). FED. R. CIV. P. 12(E). Whether to grant a motion for a more definite statement is a matter "within the discretion of the trial court." *Russell v. Grace Presbyterian Vill.*, No. 3:05-CV-0030-P, 2005 WL 1489579, at *3 (N.D. Tex. June 22, 2005) (Solis, J.) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 130 (5th Cir. 1959)). "A motion for a more definite statement is generally disfavored and is used to provide a remedy only for an unintelligible pleading rather than a correction for lack of detail." *Pension Advisory Grp.,*

*Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 707 (S.D. Tex. 2011) (quoting *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001)); *Russell*, 2005 WL 1489579, at *3.

Here, Wells' claims do not suffer from vagueness and ambiguity as much as they do from being factually and legally frivolous. The Court, and presumably the Defendants, grasp the basic facts at issue in Wells' claims. Further amendments are not likely to make those facts actionable.

The Fifth Circuit has recently reiterated the importance of providing plaintiffs with "a meaningful opportunity" to either respond to pleading deficiencies or further develop factual allegations before a court *sua sponte* dismisses the plaintiff's case. *Atkins v. Propst*, No. 20-11008, 2022 WL 24504, at *1 (5th Cir. 2022). But notice and an opportunity to amend is not required where the plaintiff has alleged his best case. *Jacquez v. Procunier*, 801 F.2d 789, 792–93 (5th Cir. 1986). And here, unlike pro se claims that may suffer only from a need for more factual development, Wells' remaining claims are frivolous and devoid of an arguable basis, either in fact or in law, for the wrongs alleged. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

But even if the Court were to assume that Wells' alleged facts are true, and construed those facts in a light most favorable to him, his remaining claims still suffer from a fatal absence of an arguable basis in law. In short, Wells' claims rest entirely upon indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

A district court may dismiss an action *sua sponte* under Rule 12(b)(6) "as long as the procedure employed is fair." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)

(quoting 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, 301 (2d ed. 1990)) (footnote omitted). Fairness in this context typically requires both notice of the court's intention and an opportunity to respond or amend. *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (citing *Lozano*, 489 F.3d at 643).

Further, Wells has fourteen days to respond to the undersigned's recommendations, providing both notice of the Court's intention and an opportunity to cure the deficiencies noted herein. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018) (finding that the objection period following a magistrate judge's recommendation for *sua sponte* dismissal of claims against an unserved state official provided the plaintiff with adequate notice and opportunity).

And for these reasons, the undersigned further RECOMMENDS that the Court deny Defendants' Alternative Motion for a More Definite Statement.

## VII.    RIGHT TO OBJECT

If any party wishes to object to any part of these Findings, Conclusions, and Recommendation, the party must file specific written objections within fourteen days after being served with a copy of these Findings, Conclusions, and Recommendation. *See* 28 U.S.C. § 636(b)(1) (2017); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not

specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 16th day of August, 2023.


JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE